IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

FRANCIS VITO GIANCANA,  )
                        )   3: 09-cv-00599-JO
       Petitioner,      )
                        )
   v.                   )
                        )   OPINION AND ORDER
MARK NOOTH, Superintendent, )
Snake River Correctional )
Institution,            )
                        )
       Respondent.      )

Noel Grefenson
Noel Grefenson, P.C.
1415 Liberty Street SE
Salem, Oregon 97302

    Attorney for Petitioner

John R. Kroger
Attorney General
Jacqueline Kamins
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

    Attorneys for Respondent

1 - OPINION AND ORDER

JONES, District Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his convictions and sentence for unlawful sexual penetration and sexual abuse. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus [40] is denied, and Judgment is entered dismissing this action with prejudice.

## BACKGROUND

On October 10, 2001, the Clackamas County Grand Jury returned an indictment charging petitioner with three counts of Unlawful Sexual Penetration in the First Degree, six counts of Unlawful Sexual Penetration in the Second Degree, and ten counts of Sexual Abuse in the First Degree. Respondent's Exhibit 102. A jury convicted petitioner on all counts except one count of Unlawful Sexual Penetration in the Second Degree and the sentencing court imposed a sentence totaling 275 months. Respondent's Exhibit 101.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without written opinion, and the Oregon Supreme Court denied review. State v. Giancana, 200 Or. App. 733, 118 P.3d 281 (2005) rev. denied, 339 Or. 700, 127 P.3d 1203 (2005); Respondent's Exhibits 103-109.

Petitioner filed for post-conviction relief ("PCR") in state court. The PCR trial court denied relief. Giancana v. Hill, Malheur County Circuit Court Case No. 06-03-5022M. On appeal, the

2 - OPINION AND ORDER

Oregon Court of Appeals affirmed the PCR court without written opinion, and the Oregon Supreme Court denied review. *Giancana v. Hill*, 222 Or. App. 605, 195 P.3d 923 (2008), rev. denied, 345 Or. 460, 200 P.3d 146 (2008); Respondent's Exhibits 128-132.

On June 1, 2009, petitioner filed this action. In his Amended Petition for Writ of Habeas Corpus, he raises the following ground for relief:

> Ground One: Petitioner suffered a violation of his right, under the Fifth and Fourteenth Amendment to the United States Constitution, to have counsel present during a custodial interrogation by officers of the Lake Oswego Police Department. As a result of these violations, officers elicited statements from petitioner and seized evidence which derived from the illegal interrogation which was introduced against petitioner at trial. Adjudication of petitioner's motion to suppress which challenged this violation of his federal constitutional rights resulted in [a] state court adjudication which is contrary to and involves an unreasonable application of controlling Supreme Court precedent. See *Edwards v. Arizona*, 451 US 477, 484-485, 101 S Ct 1880, 1885, 68 L Ed 2d 378 (1981), *Minnick v. Mississippi*, 498 US 146, 154, 111 S Ct 486, 112 L Ed 2d 489 (1990), *Oregon v. Bradshaw*, 462 US 1039, 1044, 103 S Ct 2830, 77 L Ed 2d 405 (1983), *Davis v. United States*, 512 US 452, 459, 114 S Ct 2350, 129 L Ed 2d 362 (1994), *Michigan v. Jackson*, 475 US 625, 633, 106 S Ct 1404, 89 L Ed 2d 631 (1986), *Arizona v. Roberson*, 486 US 675, 682, 100 L Ed 2d 704, 108 S Ct 2093 (1988) and *Smith v. Illinois*, 469 US 91, 105 S Ct 490, 83 L Ed 2d 488 (1984).
>
> Supporting Facts: On October 7, 2001, Lake Oswego Officer John Harrington subjected petitioner to a custodial interrogation during which petitioner unequivocally invoked his right to counsel, by asking "May I call an attorney?" In violation of petitioner's rights under the Fifth and Fourteenth Amendments to the United States Constitution, Officer Harrington failed to honor petitioner's invocation and cease conversing with him. Instead, Officer Harrington continued to speak with and question petitioner under the guise of clarifying his invocation. This violation of petitioner's rights resulted in his making incriminating statements introduced against him at trial. Furthermore,

3 - OPINION AND ORDER

>     Officer Harrington exploited the illegality of petitioner's
>     post-invocation statements to obtain petitioner's consent to
>     search his residence. With that consent, Officer Harrington
>     and other officers searched petitioner's residence and seized
>     evidence which the state introduced against him at trial. The
>     post-invocation statements and evidence taken from petitioner
>     were a material factor leading to his conviction and
>     imprisonment.

Respondent asks the Court to deny relief on the Amended Petition on the basis that the claim raised therein: (1) is barred by the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year statute of limitations; and (2) was denied on the merits in a state court decision entitled to deference.

## DISCUSSION

### I.  Timeliness and Relation Back

Petitioner concedes that he filed his Amended Petition well after the one-year AEDPA limitations period had expired. Nevertheless, he maintains the claim raised in the Amended Petition is timely because it relates back to his original, timely filed, *pro se* federal habeas petition.

A new claim in an amended petition that is filed after the expiration of the one-year limitation period will be timely only if the new claim relates back to the filing of a claim in a timely filed pleading under Rule 15(c)(2) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. <u>Mayle v. Felix</u>, 545 U.S. 644 (2005). In <u>Mayle</u>, the Supreme Court held that habeas claims in an amended petition do not

4 - OPINION AND ORDER

arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655-64. Rather, under the construction of the rule approved in Mayle, Rule 15(c)(2) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' form the originally raised episodes." Id. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. Id. at 659 & n.5.

In this case, petitioner's original petition alleged he was "denied the right to due process and equal protection of the law in violation of the Sixth and Fourteenth Amendments to the United States Constitution [ ] when the Trial Court applied an improper standard to grant Petitioner's Motion for Judgment of Acquittal of Petitioner's Motion to Compel the State to Elect and *denying Petitioner's Motion to Suppress Evidence*." Petition [1], pp. 12-13 (emphasis added). The original petition further alleges "*[t]he trial court erred in denying Petitioner's Motion to Suppress Evidence at trial to convict Petitioner*." Id. at 13. (emphasis

5 - OPINION AND ORDER

added). In his amended petition, petitioner raises a single claim alleging that the trial court's denial of his motion to suppress evidence derived from an illegal police interrogation in violation of his rights under Fifth and Fourteenth Amendments was contrary to and involved and unreasonable application of controlling Supreme Court precedent.

These claims derive from the same core of operative facts, i.e., facts surrounding police questioning of petitioner and the trial court's resolution of petitioner's motion to suppress evidence gleaned from that interrogation. Thus, the Court finds the claim set forth in petitioner's amended petition relates back to his timely filed original petition and it will therefore consider this claim on the merits.

## II. Merits

### A. Standard of Review

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of

6 - OPINION AND ORDER

correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id. at 410. The state court's application of clearly established law must be objectively unreasonable. Id. at 409.

B. **Analysis**

Petitioner contends detectives impermissibly continued to question him after he unequivocally invoked his Fifth Amendment right to counsel during a custodial interrogation. Respondent maintains that the trial court, in its resolution of petitioner's pre-trial motion to suppress, comprehensively addressed this issue.

7 - OPINION AND ORDER

After holding a lengthy suppression hearing and making extensive factual findings, that court denied relief on the motion.

### 1. Legal Standards - Invocation of Right to Counsel

When a person in custody is subject to interrogation, he must first be read his Miranda rights in order for the information obtained to be admissible in court. Miranda v. Arizona, 384 U.S. 436, 467-68 (1966). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in criminal trial." Stansbury v. California, 511 U.S. 318, 322 (1994)(per curiam).

Police are not required to obtain an express waiver of Miranda rights before proceeding with interrogation. North Carolina v. Butler, 441 U.S. 369, 373 (1979)(holding that courts can infer a waiver of Miranda rights "from the actions and words of the person interrogated"). If at any point during the interrogation a suspect invokes his right to counsel, however, all questioning must cease and may not resume in the absence of counsel unless the suspect himself waives the right by initiating further discussions. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); see also Smith v. Illinois, 469 U.S. 91, 95 (1984).

Whether the accused has invoked his right to counsel is an objective inquiry. Davis v. United States, 512 U.S. 452, 459 (1994). "A suspect must unambiguously request counsel." Id. He must articulate his desire to have counsel present sufficiently

8 - OPINION AND ORDER

clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. Id. At a minimum,

> the suspect must make some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require cessation of questioning.

Id. (internal quotations and citations omitted). Utterances which include the words "might," "maybe," or "perhaps" are generally deemed ambiguous. E.g., Davis, 512 U.S. at 455 ("Maybe I should talk to a lawyer" held ambiguous); United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005). If a request is ambiguous or equivocal police may, but are not required, to ask clarifying questions. Davis, 512 U.S. at 461-62; see also Connecticut v. Barrett, 479 U.S. 523, 535 (1987)("[C]ircumstances may clarify an otherwise ambiguous [invocation].")(Brennan, J., concurring in judgment).

"[A] statement either is such an assertion of the right to counsel or it is not." Davis, 512 U.S. at 459 (quoting Smith, 469 U.S. at 97-98). For this reason, an accused's postrequest responses to further police questioning cannot be used to cast doubt on the clarity of the initial request. Smith, 469 U.S. at 100 (explaining that subsequent statements are relevant only to the question whether the accused has waived the right he invoked).

9 - OPINION AND ORDER

Accordingly, a petitioner's postrequest responses should not be used to find that he invoked his right and quickly waived it again because in order for such a waiver to be found, the interrogation had to cease for a period of time. See Smith, 469 U.S. at 98 ("[W]e accordingly have emphasized that a valid waiver "cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation.")(quoting Edwards, 451 U.S. at 484)).

This rule exists to discourage police, after an accused requests counsel, from asking additional questions "in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement ...." Id. at 99. In Smith, the suspect made a plain request for counsel while receiving his Miranda warnings followed closely by other statements in which he essentially agreed to talk to police without counsel present. The state supreme court found the statements, considered as a totality, to be ambiguous and determined that the accused had not invoked the right to counsel. The Supreme Court reversed, holding that "an accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." Id. at 100 (emphasis in original).

Under Smith, it is irrelevant whether further police questioning seeks "clarifying" or "material" information. Smith, 469 U.S. at 98 ("Where nothing about the request for counsel or the

10 - OPINION AND ORDER

circumstances leading up to the request would render it ambiguous, all questioning must cease.") In Smith, the officer simply continued giving the suspect his Miranda rights and those continued questions were found to constitute impermissible "police-initiated custodial interrogation." Id. at 98.

### 2. Application

As noted above, a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts prior Supreme Court holdings. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Therefore, whether the trial court's decision here applied a legal rule contradictory to the holdings of Smith hinges on whether petitioner made a request for counsel that was clear and unambiguous. However, Smith was "narrow" and did not address "the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself," or the consequences of such ambiguity or equivocation. Smith, 469 U.S. at 99-100.

The central issue here is whether the trial court's determination, that the totality of circumstances rendered petitioner's request "May I call an attorney?" ambiguous and that he did not invoke his right to counsel, was contradictory to, or an unreasonable application of, Supreme Court precedent, i.e., whether the trial court could reasonably find that a reasonable officer in

11 - OPINION AND ORDER

the circumstances could understand petitioner's request to be "merely" a question or to be otherwise ambiguous due to any preceding statements or nuances in the request itself.

The Ninth Circuit recently upheld as a reasonable application of clearly established Supreme Court precedent a state court's finding that a suspect's pre-Miranda question asking whether he was entitled to a lawyer was not an actual invocation of the right to counsel. Sessoms v. Runnels, 650 F.3d 1276, 1288 (2011). In so holding, the court noted:

> When Sessoms asks if he is entitled to an attorney, his inflection, body language, and manner support the state court's conclusion that he was completely unaware if he even had a right to counsel under the circumstances and was only asking if he could request counsel.

Id. at 1288.

Sessoms, however, is distinguishable from petitioner's case because there the accused asked whether he was entitled to a lawyer before he was advised of his Miranda rights to that effect. In contrast here, petitioner had been advised of his Miranda rights, had indicated that he understood them, and had given an implied waiver of those rights by continuing to talk to the officers. See Butler, 441 U.S. at 373 (suspect can implicitly waive Miranda rights). The requirement in Davis that a suspect articulate his desire for counsel clearly enough that a reasonable police officer in the circumstances would understand the statement to be a request

12 - OPINION AND ORDER

for an attorney applies only to post-waiver requests. See Sessoms, 650 F.3d at 1283 (citing Davis, 512 U.S. at 460-61).

Notably, the trial court found that the detectives' version of what transpired from the time of petitioner's arrest at his home through his interrogation at the police station to be consistent and credible. While petitioner gave a significantly different version of events at his suppression hearing which the trial court found incredible, he has failed to rebut the state court's credibility finding as to the history of events by clear and convincing evidence in his briefs before this Court. Briefly, detectives described the relevant events as follows:

- Officers arrested petitioner at his home as he left his house for work.

- Officers advised petitioner of his Miranda rights and he acknowledged that he understood them.

- Detective Harrington then asked petitioner for permission to search his house to look for implements related to the victims' allegations.

- Petitioner stated that he would have to call his wife or "somebody" before letting officers search the house.

- Detective Harrington responded that they would deal with the search issue later on.

- Petitioner was transported to the Lake Oswego Police Department. The transporting officers reported that petitioner had not said anything en route to the police station.

- Petitioner's handcuffs were removed and he was put in an interview room.

- After answering basic biographical questions, petitioner continued to participate in the interview and answer

13 - OPINION AND ORDER

- numerous questions related to the allegations against him. He consistently denied any wrong doing.

- Some time into the interview, and after emphatically denying that he had sexual intercourse with the victim, petitioner told detectives that he wanted to call a family member.

- In response, Detective Harrington advised petitioner that he (Detective Harrington) wanted to search petitioner's house for certain items he believed were still there and that if petitioner could wait to call a family member, no one could later accuse petitioner of having someone remove those items. The detective testified that petitioner agreed to wait until after the interview and maintained there was nothing illegal in his house.

- Questioning continued and following an exchange related to petitioner's cessation of contact with the victim, petitioner stated "The amazing thing is that if you want to talk to an attorney in a case like this, you automatically seem guilty," followed by "May I call an attorney?"

- Detective Harrington then assured petitioner that he had the right to talk to an attorney, that he would make a phone available, and that if petitioner wanted to talk to an attorney, he would end the interview and allow petitioner to contact counsel. The detective then stated "If you merely want to call a family member to inform them that you've been arrested, I would prefer you wait on that," and again told petitioner that by waiting no one could later argue items from petitioner's home had been removed or tampered with.

- Detective Harrington then asked petitioner "Do you wish to contact an attorney and seek counsel, or do you wish to proceed with us asking questions." Petitioner responded that he wanted to keep talking to detectives.

Transcript Designation -- Part A, pp. 16-42.

In denying petitioner's motion to suppress, the trial court reasoned as follows:

> We don't yet have an ironclad rule that no interrogation by a police officer can take place without the presence

14 - OPINION AND ORDER

of an attorney, and so we have rules which require that if an attorney is desired, then the defendant whose right it is to have that attorney has to make that clear and has to -- that has to be invoked in some matter.

I do not believe that there was any mention by Mr. Giancana of an attorney until the discussion which took place in the interrogation room at the police station about the concern on Mr. Giancana's part that in this kind of case a request for an attorney makes one look guilty. Now, obviously the fact that that even came up, obviously and I think fairly suggests that it is likely that that's something that Mr. Giancana had been considering as he thought about this startling and unusual event of being arrested, that -- you know, that if at some point in the process he was to ask for a lawyer, you know, it might make him look guilty.

Now, that's a mental calculation that an individual may well make and may come down on either side of that question, whether to and when to ask for an attorney, and it appears clear that up until that point Mr. Giancana had in fact not asked for an attorney. But when he was considering that, certainly he raised that issue in the context of this fairly amicable interchange between the officer and the defendant about these allegations and his firm denial in large measure and unwavering denial throughout.

The -- and then after raising that issue and suggesting the negative implications that one might draw from a person asking for an attorney, says, you know, "May I call an attorney?" And at that point the officers did, I believe, exactly what they were supposed to do, and that is stop, make sure that they knew what was being requested. And here they -- you know, they indicated that if he wanted a lawyer that he could have one, and that they would make one available, and they would stop the questioning, and entirely consistent with the advice that the defendant already indicated that he was aware of from his childhood, but also what had been reinforced in the *Miranda* warnings read to him at the time of his arrest, that they would stop questioning and provide an attorney.

Now, yes, they did go on and speak to the issue about calling a family member, and I don't -- you know, I don't give that the same kind of import that, you know, that

15 - OPINION AND ORDER

> Mr. Bowman suggests in terms of it having some insidious purpose, but in the context in which the defendant was questioning whether -- you know, what would be the implications of calling an attorney in terms of making himself look guilty to the police, and then "May I call an attorney?"
>
> In my view, the fact that he had had a previous discussion about calling a family member and the question about simply advising his family that he's been arrested and such, is not unreasonable in my view in this context for the officer to say, "Now, you know, if you want an attorney, here's what we'll do. Now, if you're just -- if you just want -- are trying to just let somebody know that you've been arrested, then -- you know, then we should wait." And I think that, you know, whether that's, you know, the most courteous way to approach the issue about calling a family member or not is not really a matter of constitutional import, the way the issue about representation by counsel is, and -- but I don't find anything about that that is inconsistent with providing Mr. Giancana an opportunity to make the call. "Do you want to talk with us or not?"
>
> And the very next thing is that Mr. Giancana then according to the police officers, which I found to be entirely consistent and believable, was that he then spontaneously, not in response to any question, but then he himself began talking again about how it was his wife that always allowed Ashley to dress provocatively, you know, *et cetera, et cetera*, and from there the police continued to discuss with him these issues consistent with his indication that he did not want to stop the discussion and did not intend to halt the questioning, and by his conduct there made clear he didn't want to interrupt the discussion and call an attorney at that time.
>
> * * *
>
> And there's just nothing to indicate any effort on [the officers' part to subvert Mr. Giancana's rights [related to his invocation of counsel] in that regard, and in fact the evidence is all to the contrary, that essentially that right was simply never invoked by Mr. Giancana.

Id. at 259-64.

16 - OPINION AND ORDER

As a preliminary matter, and in consideration of relevant case law and the trial court's characterization of petitioner as a "self-employed successful businessman," "insurance broker," and one who was "obviously very self-possessed, self-confident," coupled with the fact that officers had given petitioner his Miranda warnings, the Court finds that petitioner's statement "May I call an attorney?" examined in isolation, would constitute an unambiguous request for counsel. Given the trial court's findings regarding petitioner's level of sophistication, it would be unreasonable for that court to then conclude that a reasonable officer hearing petitioner's statement in isolation would not construe it as an expression of a desire for assistance of counsel.

Significantly, however, and in accord with Smith, 469 U.S. at 99-100, the trial court did not examine petitioner's statement in isolation. Rather, it considered the statement in the context of "events preceding the request or of nuances inherent in the request itself," specifically taking note of the comment petitioner made just prior to asking for counsel wherein he lamented how asking for an attorney in a case like his made you seem guilty, and the previous discussions had between petitioner and Detective Harrington related to petitioner's requests to call a family member. In this context, the trial court concluded that the detectives had properly asked clarifying questions following petitioner's statement "May I call an attorney?" to determine

17 - OPINION AND ORDER

whether petitioner in fact wanted to invoke his right to counsel and suspend the interview.

Accordingly, while the Court finds it is a relatively close question, it cannot conclude that the trial court's determination was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[1] As the trial court noted, petitioner's comment expressing his concern that if he asked for an attorney it might make him look guilty could have indicated to a reasonable officer that petitioner remained conflicted about invoking his right to counsel. Transcript Designation, Part A, p. 260. In addition, although less persuasive, the Court finds the trial court's reference to the prior discussions between petitioner and Detective Harrington about petitioner's request to call a family member as a possible indicator to officers that the request was ambiguous and warranted clarification, was not unreasonable.

Finally, given the Court's determination above, it also rejects petitioner's argument that Detective Harrington "exploited

---

[1] For the reasons already discussed above, in determining whether petitioner's statement "May I call an attorney" was an unambiguous request for counsel, neither petitioner's subsequent responses to the officers' "clarifying" questions nor his continued participation in the interrogation can be used to cast doubt on the clarity of his original statement. The Court is satisfied that the trial court appropriately focused on the circumstances leading up to the statement to determine it was ambiguous and find that petitioner had not invoked his right to counsel.

18 - OPINION AND ORDER

the illegality of petitioner's post-invocation statements to obtain petitioner's consent to search his residence." Amended Petition [40] at 8; see also Petitioner's Brief in Support [41] at 35-36. Petitioner has failed to rebut by clear and convincing evidence the trial court's factual findings supporting its conclusion that petitioner's consent to the search was "freely and willingly and voluntarily" given. At a minimum, petitioner cannot demonstrate that the trial court's reasoned denial of petitioner's pre-trial motion to suppress, even if debatable, was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

## CONCLUSION

For these reasons, the Amended Petition for Writ of Habeas Corpus [40] is DENIED, and this case is DISMISSED, with prejudice. A certificate of appealability is granted as to the following issue only: Whether petitioner's Fifth and Fourteenth Amendment rights were violated when the trial court concluded he did not unequivocally or unambiguously invoke his right to counsel. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 8th day of June, 2012.

_____
Robert E. Jones
United States District Judge

19 - OPINION AND ORDER